# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉

JOHN FLEMING V. COMMONWEALTH OF VIRGINIA.

April 28, 1938.

Present, All the Justices.

The opinion states the case.

*D. F. Kennedy,* for the plaintiff in error.

*Abram P. Staples, Attorney-General,* and *Joseph L. Kelly, Jr., Special Assistant,* for the Commonwealth.

BROWNING, J., delivered the opinion of the court.

John Fleming, the plaintiff in error, was indicted on the charge of feloniously striking and assaulting Ralph Mullens and putting him in bodily fear and stealing, taking and carrying away from his person and against his will certain specific goods and chattels. Upon the trial of this indictment Fleming was found guilty by the jury and his punishment was fixed at confinement in the penitentiary for a period of five years. The verdict was confirmed by the trial court.

The petition for a writ of error contains this statement: "The only assignment of error relied upon by petitioner is that the trial court refused to set aside the verdict of the jury because the same 'is contrary to the law and the evidence and without evidence to support it.' "

The evidence discloses that the accused and a man named Willis were driving near the town of Clincho, near McClure river, about ten o'clock at night in the month of May, 1937; that they noticed two boys on the bank of the river with a

light. These boys were Ralph Mullens, sixteen years old, and James Linkous, twelve years old. They had a mining lamp and a twenty-two-caliber rifle and were hunting frogs. The accused called to them and asked them what they were doing fishing, saying that he and his companion were game wardens and would have to arrest them and told them to come to his car. The boys did not obey this mandate and the accused got out of his car and went to the river bank and ordered the boys to give up their gun, which they did not do and then the accused struck Mullens on the side of the head with his fist, knocking him down, and took from him the gun and his mining lamp and the frogs that he had caught and cursed him and took him to the car and made him get in it and also put the gun, lamp and frogs in the car and drove off with him despite the boy's crying and pleading with him to let him get out at his home to see his father. Willis, the companion of the accused, finally opened the door of the car and let Mullens out.

The boy went to his home at once and informed his father of what had taken place. Officers of the law were notified and while they were at a filling station in search for the accused he drove past the station and was commanded to halt. This he did not do but drove rapidly away with the officers in pursuit of him. After a chase of about three miles the accused was brought to bay by the officers firing their pistols about the ground around his car.

The most casual consideration of this evidence negatives the statement that the verdict of the jury is contrary to the law and the evidence and without evidence to support it.

The evidence shows the most wanton and cruel assault by the accused upon his innocent victim of sixteen years of age. When the accused was apprehended and arrested he had in his car the gun, lamp and frogs which he had taken from the boy. It is a flagrant case presenting the crime of common-law robbery, for which section 4405 of the Code of Virginia prescribes the punishment according to the manner by which the robbery is effected.

■■■■

■ This court said, in the case of *Maxwell* v. *Commonwealth*, 165 Va. 860, 183 S. E. 452, 454, through Campbell, Chief Justice: "Therefore, to constitute the crime of robbery in Virginia, all of the elements essential at common law must exist."

■ In the opinion in the *Maxwell Case, supra*, the case of *Houston* v. *Commonwealth*, 87 Va. 257, 12 S. E. 385, 387, is quoted, defining robbery as follows:

"To constitute this offense, there must be, first, violence; but it need only be slight, for anything which calls out resistance is sufficient; or, what will answer in place of actual violence, there must be such demonstrations as to put the person robbed in fear. The demonstrations or fear must be of a physical nature, with the single exception, that, if one parts with his goods through fear of a threatened charge of sodomy, the taking is robbery. There must, therefore, be, second, a larceny, embracing the same elements as a simple larceny; and, third, the taking must be from what is technically called the 'person'; the meaning of which expression is, not that it must necessarily be from the actual contact of the person, but it is sufficient if it is from the personal protection and presence."

The source of the above definition seems to be Bishop, in his work on Statutory Crimes, section 517.

■ The evidence in the case under consideration certainly meets every element of the crime defined.

We think the assignment of error is without merit.

This really disposes of the case as the record fails to show that any other objection was brought to the attention of the trial court, nor is any other contention properly brought before this court by any other assignment of error.

■ There is, however, interpolated in the petition the contention that the verdict is inconsistent with the indictment, because, forsooth, the punishment, under accused's interpretation of the evidence, ought to have been eight years confinement in the penitentiary rather than five, and the verdict being for the latter period acquits the accused of the only offense established by the evidence and the only

offense charged in the indictment. There is no virtue or merit in this contention.

The holding of this court in the case of *Maxwell* v. *Commonwealth, supra,* is absolutely to the contrary. The decision is predicated upon the pronouncements in the cases of *Burton and Conquest* v. *Commonwealth,* 108 Va. 892, 900, 62 S. E. 376, 379, and *Tucker* v. *Commonwealth,* 159 Va. 1038, 167 S. E. 253, and section 4918 of the Code of Virginia (Michie 1936).

It seems beyond cavil that it is settled in Virginia that evidence which is sufficient to sustain a conviction of a felony charged in an indictment is alike sufficient to sustain a conviction of a lesser offense substantially charged in the indictment.

We affirm the judgment of the trial court.

*Affirmed.*